Good morning, Your Honors. May it please the Court, Brian Ward on behalf of the government. I'd like to reserve four minutes for rebuttal. That's fine. Just keep an eye on the clock. Thank you, Your Honor. Your Honors, we ask that this Court overturn the class-wide preliminary injunction entered by the District Court, finding that plaintiffs are likely to succeed on the merits of an argument that there is a statutory right to counsel under the APA that applies in immigration proceedings, more specifically here to non-retirement interviews that occur under the Migrant Protection Protocols, or MPP. That order is flawed in a number of ways. First, as the Supreme Court long ago held, the INA supplants the APA for immigration proceedings under the INA, and so the APA's provisions don't apply. And secondly, even if the APA did apply here, the specific APA provision the District Court found applied in these circumstances on its own terms would not apply in this situation. So first, as the APA, the Supreme Court held 65 years ago in the Marcello case that immigration proceedings are exempt from the terms, the default terms of the APA. Prior to Marcello, the Supreme Court had a lot of cases that said the opposite. They said the default rules of the APA would apply equally to immigration proceedings, and Congress responded immediately to that finding in the Supplemental Appropriations Act in 1951. What Congress said was that for proceedings relating to the exclusion or removal of aliens that the provisions of the Administrative Procedure Act shall not apply. So in Marcello, the Supreme Court addressed subsequent amendments to the INA after that 1951 Appropriations Amendment, and the Supreme Court looked to say whether the successive amendments to the INA had changed that holding or Congress's intent that the APA not apply here, and specifically addressed this language that plaintiffs and the District Court rely on that's in the APA that says that if the APA is not going to apply, then Congress must say that expressly in the statute. What the Supreme Court said in Marcello is it looked for, instead, some sort of contrary indication. It said based on the legislative history, Congress has already said that for proceedings under the INA, immigration proceedings under the INA related to the exclusion of aliens, the APA doesn't apply. So they looked in the statute for any sort of indication that Congress had reversed that, had decided that the APA provisions should apply, and it said that it couldn't find any indication of that. I thought Marcello was much more focused on the very narrow question as to whether immigration proceedings issued there had been essentially exempted from the requirements of the APA, and the Court went through a fairly detailed comparison of the requirements under the INA versus those of the APA before it made its determination. That analysis seems inconsistent with your view that somehow Congress had issued a blanket exemption of all immigration proceedings, according to you, from the requirements of the APA. Well, what the Supreme Court said is it looked at how Congress had decided to adapt provisions that looked very much like the provisions of the APA for some aspects of removal hearings and had made specific choices to not apply APA-like procedures in other places. And so the INA as a whole, based on that reasoning, should be read with the understanding that Congress made particular determinations to include a right to counsel in some provisions but not in others, and when it determined not to include a right to counsel in particular statutory provisions, that should be regarded as intentional. To do otherwise, to apply the APA broadly in any circumstance in which a particular statutory provision under the INA doesn't expressly say the APA doesn't apply, would make a number of statutory provisions completely superfluous. So Section 8 U.S.C. 1362, that's a statutory provision that says that aliens in removal proceedings before an immigration judge have a right to counsel. Well, that's all that provision does. It's the only thing it says. That provision would be completely superfluous if the APA's right to counsel in 5 U.S.C. 555 applied. It's duplicative of that. There's no need to say that. And similarly, Congress has made other specific choices in the statute about when and to what extent counsel should be provided. So there's a particular type of expedited removal proceedings under 8 U.S.C. 1228. In that circumstance, Congress said specifically there is a right to counsel. There are expedited removal proceedings under 1225 B.1. There, Congress made a particular choice to allow a right to consult with counsel before a credible fear interview, but not a full right to counsel in those interviews. I think if we don't have Section 559 and its requirement that there be an express statement, your argument would be well taken. But I think that the presumption has sort of been reversed in exactly the way that hurts you because what we require is not simply that, well, perhaps Congress wanted to just be extra sure that counsel would be provided. Rather, what we need is some statement by Congress that we've made a deliberate decision to exclude the right to counsel in a particular proceeding, and we just simply don't have that in the provision we're looking at here. I don't know that that's right, Your Honor. So, again, going back to Marcello, the Court said that it was looking for some sort of contrary intent by Congress to say it did want to apply the APA's provisions. Now, note that the Supreme Court has more recently affirmed and broadened that holding in Marcello and the Ardestani case and said clearly there that the APA provisions that Marcello is holding with respect to removal proceedings doesn't apply simply to the specific removal proceedings at issue there, but applies broadly to immigration proceedings under the INA. Why do you read Ardestani to say that, besides the loose use of the phrase immigration proceedings instead of deportation proceedings? As I understand it, the government itself in Ardestani wasn't even making the argument you're trying to make now. It was just saying that basically we're dealing with the exact same provision that was at issue in Marcello. So, obviously, you've already determined, you, the Supreme Court, have already determined that this narrow type of proceeding is governed by the INA and not the APA. Well, again, I think if the APA would apply broadly to immigration proceedings under the INA, then it makes all the determinations under the INA about when counsel is available and when it isn't superfluous. And that's not a way that a statute normally should be read. Also, I think that the reasoning of Ardestani that the Supreme Court said in 1955 clearly that the APA doesn't apply to the INA, that, again, that decision was based in part on the legislative history in which Congress had plainly said that it, not just specific removal proceedings, but in that 1951 Supplemental Appropriations Act, it says any proceedings related to the exclusion or removal of aliens. So based on those two determinations and Marcello's clear statement that a statute need not include any particular type of magical words to exclude the APA's provision, Congress has been now enacting statutes and amending the INA as it did even before Marcello for 65 years under the background assumption that it need not include any particular express provision related to counsel or to any other APA provision. I mean, certainly Congress doesn't need to say, the APA shall not apply in this context. I agree with you. There's no magic words requirement in that sense. But don't we need some more express statement by Congress, let's say in this context, just to simply say, there shall be no right to counsel, no reference to the APA, but just a quite explicit contrary declaration to the right that would otherwise be available to the APA. Isn't that what 559 requires in this context? That's what 559 generally requires, but it doesn't require that for immigration proceedings. No immigration proceedings? For all immigration proceedings, Your Honor. And so what I think that this Court's decision in Castillo-Viagra is helpful on this. In that case dealt with a similar question of what type of express statement is needed and whether the INA or the APA applies to immigration proceedings. That case is helpful because it lays out the Ninth Circuit's history of interpreting Marcello. And what it says is that prior to the Supreme Court's decision in R-88, some courts, including the Ninth Circuit in some situations, had read Marcello narrowly to say that Marcello's holding applies to the particular type of removal proceedings that were issued in Marcello, but can be read narrowly to those proceedings. And that some other sort of express statement related to counsel or to APA, the APA is required in other circumstances. And what Castillo-Viagra said is that Ardestani is broader than Marcello. It broadened the holding of Marcello to all immigration proceedings in the INA, and it overturned the Ninth Circuit's earlier decisions that had gone the opposite way. It said, sure, because of particular language, or specific language in removal proceedings that were at issue in Marcello, we'll find that the APA doesn't apply. But in other circumstances outside of that, without specific language addressing the right to counsel or whatever the particular APA issue is in that case, that maybe it falls outside of Marcello. Well, Castillo-Viagra says clearly that the Supreme Court overturned that line of thinking and line of cases, and it applies broadly in those circumstances. Castillo-Viagra says that before that, there was arguments that both the APA and the INA could both apply in immigration proceedings. And what would happen is that in situations in which the INA provided specific procedures, more specific procedures that deviated from the APA, and in those circumstances, the more specific procedures would apply. Castillo-Viagra, in that case, this Court said that that line of thinking no longer applies. The INA as a whole and proceedings under the INA must be read to be passed and enacted against a background understanding that Congress made deliberate choices in the various subparts of the INA about what rights the individuals would have going through the different proceedings. Those rights are different, and in some circumstances, Congress elected that a right to counsel was necessary and should be provided. In other circumstances, it didn't, and those are intentional choices by Congress not to provide counsel. Counsel, I'd like to ask you a question, if I could just jump in, please. Can you point to any place in the INA where there's a risk of refoulement and an individual under those circumstances is not given the right to consult with retained counsel? So the one place to look at that is in the credible fear interviews. And so in that circumstance, Congress elected in 1225B not to provide a right to counsel during the interview. It provides a statutory right to consult with counsel before the interview, but Congress elected not to extend by statute the right to counsel to during the actual interview itself, which is what plaintiffs are seeking in this case. And this Court's cases and cases of other courts have held that there is no right to counsel in credible fear interviews. But there is a right to consult at least before? Exactly. There's a right to consult before, but that is based on a choice Congress made in the statute. So my question is, can you point me to any place in the INA where a person in that situation facing that risk is not allowed to consult with counsel prior to an interview? Retained counsel. Right to consult with retained counsel before the interview. Right. So I'm not aware of another statutory provision where it expressly says that they are not provided the right to consult to counsel before the interview. All right. I'm going to move along because I'm sure my colleagues have other questions too, but I noticed in your brief on page five, you mentioned that I think you take the position that the statutory scheme gives the immigration officer the discretion to decide whether to funnel someone through B-1 or B-2 through either one of those chutes. And my question is, where does that discretion come from? Where do you find that discretion in the statute? So these are parallel proceedings which individuals, unadmitted individuals, can go through. And the statute itself doesn't provide a particular rule for determining what set of proceedings individuals go through. Well, I'm not sure that's right, counsel. So just to drill down, take a person who shows up at the border undocumented. It seems to me that the statute says that person's a B-1 person. And then B-2, of course, says if B-1 applies, B-2 doesn't apply. So can you help me out? Where is the discretion there? Well, the government's view, and this is being litigated in the Innovation Law Labs case as well, the government's view is that B-2 is a broader category, that B-2 is defined as any alien who is unadmitted to the United States. Now, B-1 applies to a particular subset of those individuals who lack documents or have or engage in fraud or have fraudulent documents. But those individuals fall completely within the subset of B-2. They are all unadmitted individuals. There are particular limitations on which individuals can go into expedited removal. So I guess maybe that determination isn't entirely discretionary because individuals have to fall in those certain particular categories under B-1 in order to be placed in expedited removal. But beyond that, if individuals fall in those categories, immigration officers otherwise have discretion to put them into the proceedings under B-1 or under the return provision under B-2C. What categories are you talking about? I'm sorry, could you be specific about what categories you're talking about? That would fall under B-2? That would fall under the return? Well, I read it just the opposite. It would come to B-1 first because that's the first part of the statute, and it says that people under, I think, there are four categories fall within that statute and then that provision, and then B-2 says that if B-1 applies, B-2 doesn't apply. So my hypothetical is a person who shows up undocumented, and that person, I think, is a B-1 person under the statute. Your brief says that the immigration official has discretion to run that person through a B-2 shoot through this other parallel proceeding, and I'm just asking where does that discretion come from? Right, so the government's view is that that is not exclusive, that the categories of individuals that fall under the B-1 provision, that those are limits on the individuals that can be subject to the expediting removal provision, but all of those categories that fall under B-1 are unadmitted aliens, and B-2 applies broadly to unadmitted aliens, which leaves it open to immigration officers to either place them in the expedited removal proceedings or to place them under the voluntary return provision. There are cases holding that immigration officers also have discretion for an individual that might be subject to expedited removal under B-1 to also place them into full removal proceedings under 1229. So the categories of individuals that fall under the expedited removal provision under B-1, those are again limits on who can be subject to that particular type of expedited removal, but they don't remove discretion to put those individuals into the other types of proceedings the INA anticipates. Can you tell me any difference at all between a credible fear interview and a non-refoulement interview? Is there any difference? There are differences. So the credible fear interviews, there are particular statutory provisions under 1225 that sets out how those interviews are to be conducted, and then additional regulations that further flesh that out. I think I didn't ask a good question. Here's what I mean. The purpose of both of them is the same, is it not? I fully appreciate that under B-1, Congress is more specific than under B-2, which is one of the problems we've got because this is being used now in a very different way. But I'm asking about the purpose of the interview, what happens in the interview, apart from access to counsel preparing for a credible fear interview. Is there any difference functionally? They are similar in a lot of ways. Obviously, for individuals under the return provision, that provision is designed not to determine whether an individual has a fear of being returned to the country they came from or that they might be removed to. It's to a third country, Mexico, where it's intended that they will only be returned there for a temporary amount of time. So we're not dealing with the country from which an individual is fleeing and might claim a fear from. It's a particular country in which they have not resided in before coming to the United States and which they're supposed to only return temporarily during the proceedings. It's also a country in which the United States has particular agreements with the government of Mexico in order to ensure that the safety and resources... Counsel, I'm not hearing you tell me any difference between the functional differences in these interviews. And your time is running out. I want to make sure that Chief Judge Rosenthal has a chance to answer or ask her a question. So do you have any differences? Functionally, they are similar, Your Honor. The goal of the interviews is to determine whether an individual has a fear of persecution or torture in the country they return to. Thank you. I just have one very brief question. I'd like you to address how the alien's presence at this interview can be considered anything other than compulsory if this is the only way in which the alien can seek relief from what would otherwise be the removal. All right. So you're asking about the compelled provision in the EPA? Exactly. Yes, Your Honor. So the compelled has a very particular meaning, has a particular legal meaning, which means being compelled by subpoena. If you look at Section 555 U.S.C. 555D, it talks about agency subpoenas. And as some of the cases in our briefs talk about, the cases say that they're not aware of any case in which this provision has been applied outside of being compelled by an agency subpoena. Also, the problem with the argument that detention itself compels an individual's presence, well, if that's true, again, there are lots of provisions under the INA in which an individual is detained. So under expedited removal, individuals are subject to mandatory detention during that. So if mandatory detention alone was enough to say that an individual was compelled to appear, then this provision would have to apply in expedited removal proceedings as well. And we know that's not the case because this Court and the Barajas case and other courts have held that there is no statutory right to counsel or no statute that applies directing the right to counsel in expedited proceedings. Thank you, counsel. You're out of time, but when we come – Judge Watford, did you have another question? Sorry, yes, I was on mute. Can I ask counsel for the government just to address that second sentence of 555D as well? I know the district court didn't reach it, but I'd love to hear what you have to say about why that provision doesn't apply as well. Yes, Your Honor. So again, as you noted, this is not a provision that the district court relied on, so it's not something this court should reach in the first instance. But the second – the government's position on the second sentence of 555B is that it is limited to agency proceedings. Agency proceedings have a particular definition under the APA. It's rulemaking, it's licensing, neither of those apply. So you'd have to find that this is an adjudication. And as we said in our brief, an adjudication involves a determination leading to a final order having legal consequences. So a decision in a non-report filed on here is a temporary intermediate step. As the district court held, this is an intermediate step in a long process for these individuals, and it's something that they can revisit over and over again. So they can have this interview. The asylum officer can find that they don't have a fear of returning to Mexico. They can be returned. They can raise it over and over again and revisit it. So it's not the type of final agency order with legal consequences that constitutes an agency proceeding within the meaning of the APA. And so this provision would not apply to this type of interview. Why don't you think the whole or a part of language of the definition of border in 551, why doesn't that encompass something that's like a step on the way to the final disposition? So a step on the way. So I think that the part of would be some part of a final agency order that has particular final legal consequences for an individual. And again, this is, again, not part of some later final order. It's an order that they can revisit over and over again. It's also a temporary order. This is a temporary return to Mexico. This is not a final removal order determining the individual will be permanently sent to Mexico. It's not the type of removal order that might be issued at the end of their proceedings before the immigration judge. It's a temporary decision about where the individual will be during those proceedings. So for individuals, if they were in the United States and detained, if the agency made a determination to move them from one facility or one location to another, that wouldn't be a final decision by the agency that couldn't be revisited or have the type of legal consequences that would constitute a final order or adjudication of the APA. And the same is true here. We're just talking about a different type of location. Okay. Thank you. Thank you, counsel. We'll hear from opposing counsel now. Thank you. Good morning, Your Honors. My name is Monica Langarica for Plaintiff Appellees. Your Honors, I'd like to begin by addressing the way the government has characterized the injunction in this case, which is one that is unsupported by statute. The preliminary injunction in this case upholds the plain language of a controlling statute that guarantees the very basic and fundamental right of access to retained counsel to people who are detained and sometimes handcuffed in government custody, facing decisions on life or death interviews that are critical to their safety, and in many cases, as the record shows, the safety of their children. The district court properly exercised its discretion in issuing the injunction here, and this court should affirm for three major reasons. One, the district court correctly held that APA section 555B guarantees the right to retained counsel in these interviews because class members are compelled to appear at non-refoundment interviews, and alternatively, because non-refoundment interviews are qualifying agency proceedings. Two, the district court correctly held the APA has not been expressly superseded by any subsequent statute. And three, the district court correctly held the applicable factors for your relief here. Can you respond to the argument about the relationship of B1 and B2? Your Honor, I will respond to that by saying that this case doesn't challenge the discretion of the government to funnel people through those respective statutes. This case challenges the denial of the right to access retained counsel in these interviews once the government exercises its discretion, whether it has authority to do so or not, to subject people to the migrant protection protocols, and where people who are subject to MPP fear persecution or torture in Mexico. This is a limited case, and again, the injunction is supported by the plain language of the statute. I'm going to start by addressing the compulsion issue. Section 555B, as Judge Watford pointed out, contains two sentences governing access to counsel. The first guarantees any person compelled to appear is entitled to be accompanied, represented, and advised by counsel. The statute does not define what it means to be compelled to appear. And where there is no case law on point, the ordinary meaning of that word applies. Even taking defendants' board of law dictionary definition, compel here means to cause or bring about by force, threats, or overwhelming pressure. The district court correctly found here on undisputed facts that class members are compelled to appear in non-refoundment interviews, where class members are seeking asylum from their home countries, they are detained, they're sometimes handcuffed in government custody prior to and during the interviews, and these are class members who may be separated from family members while in detention four days at a time. There's really no question here that under these circumstances, class members are compelled to appear by force or overwhelming pressure, and they certainly do not appear voluntarily at the time of the interviews. And contrary to the government's argument, whether class members trigger the non-refoundment interview process by declaring a fear of an article is irrelevant to the determination that they're compelled to appear, because once they declare fear, the government detains them under these circumstances. That clearly renders their participation at the time of the interviews non-voluntary. Can I ask you, what if the petitioners were not detained in this setting, but everything else was the same? Would you still say that the first sentence applies? Your Honor, you know, one, those aren't the facts in the record. I think the second sentence undisputedly would still apply here. Just answer my question about the first sentence, because I'm trying to figure out how much of your argument turns on the detention component and how much does not. I don't think the first sentence would apply as clearly here. I think the conclusion of this case is we've got to look at the facts altogether. The fact that these individuals, that class members, are people seeking asylum, and that they fear persecution and torture in Mexico, that certainly goes to compulsion. So to frame this as a choice, I think, misunderstands those facts. And then when you add the fact that detention and handcuffs and separation from family, I think it makes that even more clear. How do you respond then to your opponent's argument that, well, if the detention part is key, then all the folks in expedited removal proceedings are also detained. And so, therefore, we'd have to recognize a right to counsel in that context, too. Your Honor, I think the expedited removal argument respectfully is misguided. You know, as a threshold matter, and I'm happy to address it anyway, but as a threshold matter, the question about the right to counsel in expedited removal was not before the district court. But I think if Marcelo, Artestani, and Azar all instruct us that the question – so if we're talking about expedited removal, I think we've got to look at whether that statute has been – whether the IMA has superseded the AP for purposes of expedited removal. That's sort of – we have to presuppose that. And I think that presupposition is wrong. Because these cases, Marcelo, Artestani, and Azar, they instruct us that the question of whether a statute has superseded the APA must be answered on a statute-by-statute basis. As the government pointed out, it requires the court to take a close reading of the statute, to look at the legislative history of the statute, to determine whether Congress, either in form or in function, intended for the APA to be supplanted. So whether the IMA has displaced the APA for expedited removal – first of all, that's a different question than the one in this case. It would require the court to analyze the procedure that Congress prescribed for expedited removal to determine whether it can – and I'm pulling from Azar here – quote, reasonably be understood as departing from the APA, end quote. But, counsel, you're addressing that first issue, whether the APA has been displaced. I'm focused on the second issue. Let's assume you're right, that the APA hasn't been displaced, but now we're trying to figure out whether, in fact, the APA provision provides a right to counsel. As I understand your argument, it's that anytime somebody is detained, if they are then seeking some kind of a discretionary benefit from the government, they are compelled to appear in whatever proceeding is going to be had to determine whether they get that benefit. And that just strikes me as an odd reading of the word compelled. Again, Your Honor, the facts in this record are clear. And I do not think that the implication of the district court's ruling in this case means that anytime somebody is detained, the APA applies. Because we have to look at these other factors that go to whether the APA has been supplanted. But, counsel, in this context, the government is not compelling them to appear in any sense of the word that we traditionally think of. Either you've been subpoenaed or you've been served with a summons in some kind of an enforcement action. They are seeking a benefit that the government makes available to them. And certainly I don't doubt for a second how valuable that benefit is in this context. But they're not a benefit. The government's not compelling them to go down a particular adjudicatory path. And so what I understand you to say is that, well, if they weren't in detention, then, yeah, I guess you couldn't really say they were compelled because they're electing to seek this benefit. But you say, well, but because they're detained, that changes everything. I guess I don't quite understand why that would be. I guess, Your Honor, if the court will indulge me for a second, I think this goes to this idea of who puts the process in motion here. Whether class members put the process in motion, does that take away from the fact of the compulsion? And I think here, even if applicability turns on who puts the non-reformatory process in motion, class members are still compelled to appear because the government here has put the entirety of the process in motion where class members have not elected to participate in the MPP program. Can I ask a question on that? And maybe this, I don't know if this is helpful or not, but could we recast it in terms of the benefit that is obtained by having the interview as the government's obligation? It is the government discharging its obligation to ensure that it is not running afoul of the non-refoulement obligation. And in order to determine whether that is true, that is so, the government has to determine whether the alien would more likely than not, well, has to be sure that the alien is not going to be at a more likely than not risk of torture or persecution if detained in Mexico. And so it's the government that has required this procedure if the alien expresses that fear. Right, so I guess going back to the initial question about the discretion of the government to funnel class members through the respective statutes, it's the, you know, the government conceives that it has the discretion to choose which statute to follow here. And it chooses to funnel people through the return statute. And so at that point, it has all of these things together, sort of in a situation where the government forces class members into conditions where one, they fear persecution or torture in Mexico that would not exist but for the government's decision to put people into MPP. Class members are not natives or citizens of Mexico. It would not be in Mexico, but for the government's choice to funnel them through the return statute. And then once class members declare that fear, the government detains them under such circumstances that their participation in the non-refoulement interviews themselves is obligatory and non-voluntary. And it's not just, are you saying that the circumstances go beyond the fact of detention? I am, Your Honor. I think on this record, and these are undisputed facts, on this record, class member, the district court did not err in finding that class members are compelled to appear when we take all of these facts together. What is your best case for that? It's the language of the statute, Your Honor. It is also, I think, if we look at the Salem case, where the government argues that Salem supports their position because the petitioners in that case were not compelled to appear where they were appearing at a passport point. The petitioners in that case were not detained. They were not handcuffed. They were not undergoing a proceeding seeking protection from persecution and torture. They were seeking a passport at a consulate abroad, and they were appearing at window appointments. But I think that case supports ours for an additional reason. Even if this court disagrees that class members are compelled to appear, I think the second sentence that Judge Watford emphasized earlier of Section 555B that states that people have the right to appear with counsel in an agency proceeding. In Salem, the court found that even though the petitioners were not compelled to appear, Section 555B still applied because the second sentence of the statute controlled. And as we briefed in this case, non-refoulement interviews take place before USCIS, which is an agency, and they do adjudicate whether a class member will be forced to return to Mexico where they fear persecution or torture pending these removal proceedings. The results of those proceedings are collateral to the merits of removability. They don't make it into the record of proceedings. They're final, they're unreviewable, they're unappealable, they're not subject to being reopened or reconsidered per defendant's own policy documents at page 130 of the Excerpts of Record. So in that way, those dispositions on those decisions are final, and they are qualifying agency proceedings. The government's analogy to moving between detention centers, I think it's just, it misses the point here. This is, class members undergo non-refoulement interviews because they fear persecution and torture. The decision to move people between detention facilities, it may be an administrative decision, it's certainly not the result of an adjudication of whether somebody is more likely than not to face persecution or torture where they are detained at that point. And again, what is your best case for construing the second sentence to mean what you say it means, the definition of agency? I think it's Salem, Your Honor. Again, the court found that compelled or not, Section 555 be applied because the decision to issue passports in those passports windows at that consulate were final decisions. So your view is that the second sentence applies because the non-refoulement interview is itself the proceeding, and that's the entirety of, you have to look at that as like its own little mini-proceeding, and there's a final disposition issued at the end of that interview? That's correct, Your Honor. And again, that decision on that interview is not reviewable or appealable, and the government makes that clear. Additionally, the facts in the record here show that class members waited weeks or months between court hearings at which they have the opportunity to declare fear and surrender themselves to a non-refoulement interview. When people fear persecution and torture, the fact of weeks to months between the opportunities to declare fear in practical terms can be rendered final decisions. We know from the record that class members in this case suffer serious harm and persecution in Mexico. And again, this is their only remedy for seeking protection from that harm. And unless the court has any other questions on this point, I'm going to move to my second point to address the issue of whether Section 555B has been expressly superseded by statute. Your Honors, in Section 559, Congress directed that the right to counsel under 555B applies unless it is expressly superseded by statute. And in Azar, this court held that a statute likely does not supersede the APA if it is, quote, silent as to any required procedure, end quote. And, quote, neither contains expressed language exempting agencies from the APA, nor provides alternative procedures that could be reasonably understood as departing from the APA, end quote. And that's 911S3 at 578. The INA cannot displace the right to counsel under the APA here because the INA does not mention non-retailment interviews at all. And silence is not expressed as required by Section 559. So the silence in the INA as to the right to counsel for non-retailment interviews cannot supersede the default right to counsel guaranteed by the APA. Congress could have said that statutes supplant by inference or implication, but it didn't. It imposed a clear mandate, which this court has affirmed, that only allows a statute to supersede expressly. The INA doesn't do that. The return statute at USA 1225B2C does not supersede because it is, and again I'm pulling from Azar here, quote, silent as to any required procedure, end quote, for non-retailment interviews. It says nothing about the duty of non-retailment interview procedures or the right to retain counsel in non-retailment interviews. It discusses only the return to a contiguous foreign territory pending removal proceedings. Now the INA does supplant the APA for purposes of removal proceedings, I think as the parties agree. The significance here is that non-retailment interviews are not removal proceedings. Whereas removal proceedings occur on the record before an immigration judge and determine ultimate questions of admissibility, removability, non-retailment interviews don't occur on the record or before an immigration judge. They do not determine whether a person will be removed or whether the application for relief will be granted, but rather they determine where somebody will reside during removal proceedings, so while those questions are ultimately adjudicated. So the provisions codifying the right to counsel in removal proceedings in the INA, which has supplanted the APA, are irrelevant to the applicability of 555B, which, again, are collateral and separate from removal proceedings. Can I ask you to address our prior decision in Castillo? How do you read what our court said there? Your Honor, I think a key distinction in Castillo is that, one, I guess the INA has gone through many iterations since the Supreme Court's original holding in Marcello. And so what we then knew as deportability is now removability, and removability encompasses now this idea of deportation and admissibility. Somebody in removal proceedings can be subject to both of those questions. In Castillo, the petitioner there challenged the applicability of the APA to this application for asylum. And again, asylum goes to these ultimate questions of admissibility and removability, which I think are the key distinctions, again, between non-refoundment interviews and the holdings in Marcello, Artestani, and Castillo-Viagra. Let me just maybe be a little bit more specific in my question. The government, of course, argues that Marcello and Artestani actually did announce this broad holding that essentially all immigration proceedings, the APA has been displaced from all of them. I don't think that's the correct reading of either of those cases. But then the government says, well, that's a debatable point, and you all, meaning our court in Castillo, you basically have already sided with us, the government, in reading Artestani in particular as having this much more sweeping holding. If that were true, I think we would perhaps be bound by Castillo, notwithstanding how we might read those two earlier Supreme Court cases. So I guess that was my question. How do you respond to their argument that actually Castillo has already resolved the dispute over how broadly or narrowly Artestani should be read? Your Honor, I see I'm running out of time. May I? Yes, please. So first, Your Honor, I think this, the reliance on Artestani and Marcello, Castillo's reliance on Artestani and Marcello, and the facts in Castillo, so Castillo, the holding in Castillo must be taken in the context of its facts, and the facts there, again, involve this application for asylum, which goes to these questions that are unrelated to non-refounding. That's a key distinction. I don't think Castillo has resolved the question for us because, and I go back to this issue, that the question of whether the INA has supplanted the APA cannot be looked at full-scale. We must look at it retail. We must look at it statute by statute. And the holdings in these cases show us that it's only by looking at it statute by statute and by doing a close reading of the statutes that we can determine whether Congress intended to either expressly, or because it prescribed an alternative procedure that can be reasonably understood to depart from the APA, whether Congress intended for that statute to supersede. Non-refoundment interviews are not provided for in any statute. Non-refoundment procedures, interviews, are not provided for in the INA. They're not provided for in any of the hearing provisions of the INA, or even in the expedited removal statute. So the question before the court here, I think respectfully, is whether Congress intended for the INA to supplant the APA as to non-refoundment interviews. And the answer there cannot be anything other than no, because Congress has not detailed any procedure for non-refoundment interviews. We cannot, I think a wholesale holding that the APA has been supplanted by the INA for all immigration proceedings, is a sweeping reading of the holdings in Marcelo Artespani and in Castillo. It could permit the court's denial of the applicability of the APA in situations like the timelines for adjudicating adjustment of status applications, or naturalization interviews, where we know that there's a right to counsel in those situations, which, again, are immigration proceedings, but are not governed by the removal hearing provisions of the INA. Counsel, you are well over your time, so I'm going to stop it there. Did you want to wrap up? Was there something you were trying to say to wrap up? Your Honor, I'll just say thank you. The injunction in this case affirms the basic fundamental right of access to counsel. The district court did not abuse its discretion in issuing it, and this court should affirm. Thank you. We'll put two minutes on the clock for rebuttal for the government. We asked you several questions and took you over time, so we'll give you two minutes, sir. Thank you, Your Honor. Just a couple quick points. First of all, to this argument that the district court adopted as well, that Marcelo applies only to proceedings in which removability will be determined. And in Castillo, the court noted explicitly that the plaintiff in that case had conceded deportability, so that wasn't an issue in that case. And also note just sort of the presumption that Congress needs to be given that they're enacting legislation under an understanding of the background case laws addressing an area of law. The Supreme Court reaffirmed this basically every term, but recently this term in Guerrero, that Congress is to be assumed to be legislating with an understanding of what the case laws have said about an area of law. And here we have cases from the Supreme Court in 1955 and 1991, and this court's decision in Castillo in 1992 saying that the INA supplants the APA. So to hold Congress then to an express statement related to removing the APA from a particular subprovision within the INA when Congress is supposed to be, is inconsistent with that presumption we're supposed to give Congress that they understand that courts have already held, more broadly than just removal proceedings, that the APA doesn't apply to proceedings under the INA. And then just one last point on the fact that non-filement interviews aren't specifically set out in the statute. This is true of a lot of provisions in immigration law where the statute sets out some basic procedures and then they're fleshed out by agency policy and regulations. So these non-refinement interviews exist solely under the government's authority under 1252b2c. And so that's the statute that needs to be looked to for determining the statutory rights of individuals. I think this court's decision in the Zeninga case is relevant. In that case, they addressed expedited removal proceedings in 1228. Congress had passed a statute providing for reasonable, or the agency had passed a regulation providing for reasonable for your interviews for those individuals. It's not contained in the statute, but what the Ninth Circuit said is the right to counsel is not determined by what's done in the regulation or agency policy, but you have to look to the underlying statute in which the interviews are taking place. There, 1228 provided a right to counsel. Here, 1252b2c does not. And for those reasons, we'd ask for this court to overturn and vacate the district court's preliminary injunction. Thank you, counsel. Thank you both for your helpful argument, very helpful argument. We'll take this case under submission. I'm going to stand in recess, just take about a five-minute break.
judges: Christen, Watford, Rosenthal